UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JASON HOOD,

    Plaintiff,                                      CASE NO. 05-CV-10254

v.                                            DISTRICT JUDGE DAVID M. LAWSON
                                                 MAGISTRATE JUDGE CHARLES BINDER

MICHAEL KRAJNIK,
and JOHN DOE 1-2,

    Defendants.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**
(Dkts. 29, 34)

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant Krajnik's Motion to Dismiss or for Summary Judgment be **GRANTED**, that Plaintiff's Motion for Summary Judgment be **DENIED**, and that the case be **DISMISSED**.[1]

---

[1] I do not recommend that the claims against the John Doe Defendants be dismissed for failure to identify the defendants, as this would run contrary to the holding in *Maclin v. Paulson*, 627 F.2d 83 (7th Cir. 1980). Rather, the recommendation is that the claims against the John Doe defendants be dismissed substantively for Plaintiff's failure to plead a claim that satisfies the Prison Litigation Reform Act's requirements and for his failure to support his excessive force claim with any medical evidence of more than *de minimus* injury. In this circuit, deficient complaints against John Doe defendants may be dismissed on substantive grounds. *Keenan v. Baker*, 914 F.2d 256 (6th Cir. 1990)(Table)(affirming district court's grant of summary judgment and dismissal of complaint against named and John Doe defendants); *Harris v. City of Cleveland*, 7 Fed. Appx. 452 (6th Cir. 2001); *Martin v. Harvey*, 14 Fed. Appx. 307 (6th Cir. 2001).

## II. REPORT

### A. Introduction

By order of U.S. District Judge David M. Lawson, this case was referred to the undersigned Magistrate Judge for general case management on September 30, 2005. (Dkt. 6.) Pending are the above-entitled motions. Plaintiff filed a response opposing Defendant's motion. (Dkt. 35.)[2] After review of the pleadings, pursuant to E.D. Mich. LR 7.1(e)(2), these motions are ready for Report and Recommendation without oral argument.

### B. Background

Plaintiff is an inmate in the custody of the Michigan Department of Corrections ("MDOC") and is currently housed at the Bellamy Creek Correctional Facility ("IBC") in Ionia, Michigan. The incidents giving rise to Plaintiff's complaint took place while he was incarcerated at the Standish Maximum Correctional Facility ("SMF") in Standish, Michigan.

Defendant Michael Krajnik is a Resident Unit Manager ("RUM") at SMF and is an employee of the MDOC. (Ans., Dkt. 21 at 2.) Plaintiff also names John Doe 1 and 2 in his complaint and states that they are correctional officers at SMF. (Compl., Dkt. 1 at 4.)

In Plaintiff's *pro se* complaint, filed July 25, 2005, he alleges that on April 19, 2004, around 10:05 p.m., he suffered a "very sharp pain" in his "bad right knee and leg" to such a degree that he "was unable to stand or walk on it." (Compl., Dkt. 1, ¶ 1.) At that point, Plaintiff "made unit officers aware of this matter and they said they would contact health services for [him]." (*Id.*) According to Plaintiff, a nurse came and complained about the late call, argued with Plaintiff, left, and later claimed that Plaintiff refused treatment. (*Id.* ¶ 2.)

---

[2] Plaintiff's response is entitled "Plaintiff's Motion Opposing Defendant Krajnik['s] Motion to Dismiss and or for Summary Judgment." (Dkt. 35.)

On April 20, 2004, around 6:05 a.m., Plaintiff "made officer Klapish aware of [his] knee and leg problem and [Officer Klapish] said he would contact health care for [Plaintiff]." (*Id.* ¶ 3.) At approximately 9:00 a.m., "nurse Bailey came to [plaintiff's] cell by herself and ask[ed Plaintiff] what was wrong." (*Id.* ¶ 4.) After Plaintiff explained about his knee and leg problems, Nurse Bailey stated that "she would have [Plaintiff] called out [from his cell to health services]" but, Plaintiff notes, he was not given any health care at that point in time. (*Id.*) Plaintiff avers that, around noon, he "hopped" on his left leg to the Officer's station to again request some medical attention be paid to his right knee and leg where he encountered Defendant Krajnik. (*Id.* at 5.) After Plaintiff explained his knee and leg condition, Defendant Krajnik told Plaintiff "to go to chow or lock up." (*Id.*) Plaintiff continued to ask for medical care but Defendant Krajnik "ordered officer Klapish to handcuff [Plaintiff] to be taken to segregation for refusing to lock up." (*Id.*)

Soon thereafter, officers John Doe 1 and 2 "came in the unit and told [Plaintiff] they were there to escort [him] to segregation." (*Id.* ¶ 6.) Plaintiff again complained about his leg problem but the officers insisted that Plaintiff walk to segregation so Plaintiff "hopp[ed]" toward segregation on his left leg. (*Id.*) However, "after hopping out of the unit and a few yard [sic] down the sidewalk, [Plaintiff's] left leg began to get very tired so [Plaintiff] went down." (*Id.*) "These two officers then bent both of [Plaintiff's] wrists back with extreme force, lifted [Plaintiff] up and started dragging [Plaintiff]." (*Id.*) Plaintiff claims the officers continued to "keep the force applied to [his] wrists" and "bent" his wrists "maliciously and sadisticaly [sic] with the intent to cause [him] great harm which they did." (*Id.*) Plaintiff "scream[ed]" and shook "from the pain" and the officers then placed Plaintiff on some kind of cart and wheeled him to segregation. (*Id.*) Plaintiff states that he never resisted the officers and that he was positioned so the camera would

3

not pick up the officers' treatment of his wrists. (*Id.*) Plaintiff complained about his wrists when he arrived at segregation but he was not believed. (*Id.* ¶ 7.)

Around 12:30 p.m., a physician's assistant named Heebsh examined Plaintiff's knee and leg in segregation and recommended that Plaintiff be taken to a hospital. (*Id.* ¶ 8.) Upon examination at the hospital, it was concluded that Plaintiff suffered from a "strained knee or pulled muscle." (*Id.*) The examining physician noted that Plaintiff had arthritis and a bone spur on his knee and added that he may have recently acquired a "possible meniscal injury" and prescribed pain medication (Motrin 600). (Def.'s Mot., Dkt. 34, Ex. 2 at 7.)

Plaintiff alleges that he has suffered the following harms due to the "excessive force those two officers applied to [his] wrists":

- (A) Both wrist bones are now deform [sic], very unstable, and dislocated.

- (B) Both ring finger knuckles are torn apart and out of line from [his] middle finger knuckles.

- (C) Both ring fingers are now permanently pressing against my middle fingers and I cannot spread them properly, especially on my left hand.

- (D) The veins in both of my hands and arms are severely damaged and are still brused [sic] to this day.

- (E) Now both of my hands have constant pain, numbness, and stiffness and now my hands always goes [sic] dead on me in my sleep and wakes me with a painful tingling sensation.

- (F) Both arms and elbows are twisted around out of place and when I twist it back around in normal place, my wrist bones then falls [sic] back in place and everything feels much better.

- (G) My wrist injuries has [sic] caused my latest T.B. shot to leave a permanent mark on my arm. Prior to my wrists [sic] injuries, my T.B. shot had never left a mark on my arm.

- (H) I have lost normal use of my ring fingers and left arm. Now I often find myself holding my my [sic] left arm and not using it even though I'm left handed.

4

(*Id.* ¶ 9.)  Plaintiff asserts that "both of his hands, wrists, fingers, arms, and elbows were in perfect condition" prior to the incidents described above.  (*Id.* ¶ 10.)

Plaintiff seeks $25,000 compensatory damages from Defendant Krajnik for physical and emotional injuries, $1,000,000 dollars from Defendants John Doe 1 and 2, jointly and severally, for physical and emotional injuries resulting from their alleged use of excessive force  as well as punitive damages in the amount of $25,000 from Defendant Krajnik and $500,000 each from Defendants John Doe 1 and 2.  (*Id.* at 5.)

### C.  Motion Standards and Governing Law

#### 1.  *Pro Se* Status

I note at the threshold that Plaintiff brings this action *pro se*.  A *pro se* litigant's pleadings are construed liberally and judged against a less stringent standard than pleadings drawn by attorneys.  *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).  However, it "is not the proper function of the district court to assume the role of advocate for the *pro se* litigant."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  In other words, the court is not to "construct arguments or theories for the plaintiff in the absence of any discussion of those issues."  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (citation omitted).  "[A] *pro se* litigant, whether a plaintiff or defendant, is required to follow the law."  *Williams v. Sears, Roebuck and Co.*, 143 F. Supp. 2d 941, 947 (W.D. Tenn. 2001).  As the U.S. Supreme Court stated in *McNeil v. United States*, 508 U.S. 106, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993), "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."  *Id*. at 113.

**2.   Summary Judgment Standards**

The parties have filed cross-motions for summary judgment.[3]  A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  All facts and inferences must be viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence.  *Matsushita*, 475 U.S. at 587-88.  Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof.  *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993).  When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist.  *Street*, 886 F.2d at 1479-80.  Instead, the court will rely upon the "facts presented and designated by the moving party."  *Guarino v. Brookfield Twp.*

---

[3] Because the parties have presented and relied upon materials outside of the pleadings, the Court will treat Defendant's Motion to Dismiss and/or for Summary Judgment as a Rule 56 motion for summary judgment.  *See* FED. R. CIV. P. 12(b).

6

*Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**3. Eighth Amendment Standards**

The Eighth Amendment to the U.S. Constitution protects convicted inmates from the imposition of "cruel and unusual punishments." U.S. CONST. amend. VIII. In the context of prison medical treatment, the Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), that the deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain in violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment to the Constitution. The Court explained that "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106.

A violation of the Eighth Amendment can occur if it "is manifested by prison doctors and their response to prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." The inquiry is

two-pronged, consisting of both an objective and a subjective element. *Wilson v. Seiter*, 111 S. Ct. 2321, 2323, 115 L. Ed. 2d 271, 279 (1991). The objective inquiry asks whether the deprivation was sufficiently serious. *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). The *Caldwell* court found that the plaintiff-prisoner "did not suffer a serious deprivation because his injuries were not serious enough to require immediate medical attention." *Id.*

A medical need is sufficiently serious if "facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2005). However, "[t]his 'obviousness' standard for determining a serious medical need is distinct from a separate branch of Eighth Amendment decisions where the seriousness of a prisoner's medical needs 'may also be decided by the *effect* of delay in treatment.'" *Id.* (emphasis in original).

The subjective component asks whether the officials acted with a sufficiently culpable state of mind. *Id.* The plaintiff must show that the defendant's conduct demonstrated a level of deliberateness "'tantamount to an intent to punish.'" *See Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993) (quoting *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988)). In 1994, the Supreme Court further explained this element "by equating it with criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm." *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (citing *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994)). In *Farmer,* the Court specified that for a government official to be deliberately indifferent, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Finally, the government official must have "disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

8

When a plaintiff claims that delay in medical treatment amounted to a violation of the Eighth Amendment, he must "'place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" *Napier v. Madison Co., Ky,* 238 F.3d 739, 742 (6th Cir. 2001), quoting *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994). However, "where a plaintiff's claims arise from an injury or illness 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention,' the plaintiff need not present verifying medical evidence to show that, even after the delayed necessary treatment, his medical condition worsened or deteriorated." *Blackmore,* 390 F.3d at 899-900. "Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id.* at 900.

D.   **Analysis and Conclusions**

   1.   **Claim Against Defendant Krajnik**

Plaintiff alleges that at noon on April 20, 2004, he hopped on his left leg to the officer's station to request medical attention for his right knee and leg and Defendant Krajnik told him "to go to chow or lock up." (Compl. ¶ 5.) When Plaintiff continued to ask for medical care, Defendant Krajnik then "ordered officer Klapish to handcuff [Plaintiff] to be taken to segregation for refusing to lock up." At 12:30 p.m., a physician assistant saw Plaintiff in segregation and ordered that he be transported to the hospital. (*Id.* ¶ 8.) Thus, according to Plaintiff's own allegations, Defendant Krajnik's refusal to call health care at noon only delayed his access to medical assistance by thirty minutes.

Defendant Krajnik has attached medical evidence to his motion to show that Plaintiff did not suffer damage from any delay. Dr. Joseph Burtch, a physician at SMF, states in an affidavit that "Plaintiff's complaints about his right knee that morning were nothing more than routine

9

requests . . . [and there] was no need for Plaintiff to be seen immediately." (Burtch Aff., Def. Mot., Ex. 2, ¶ 9.)

Plaintiff counters with an affidavit from a fellow prisoner, Larry Cheatham, wherein the affiant states that he noticed the "deformity with Plaintiff [sic] knee and dislocated bone right under his knee," which Plaintiff claims reveals his medical need. (Pl.'s Resp., unlabeled Ex. 1 at 9.) However, this statement of deformity is consistent with the record medical evidence that Plaintiff suffers from osteoarthritis of the knee and a bone spur that has been an on-going problem, not one necessitating immediate attention. This affidavit, therefore, does not assist Plaintiff in proving that a delay in treatment adversely affected him. To the contrary, medical records attached to Defendant's motion indicate that Plaintiff has experienced knee problems, including osteoarthritis and a bone spur, for at least a decade. Plaintiff appears to rely on the fact that he "is suffering from a severely degenerative right knee including several serious impairments which include a DLD, marked quadatrophy, cartilage injury, chronic ACL tear, chronic arthritis, a possible meniscal tear and several other serious impairments." (Pl.'s Resp. ¶ 2(k).) Although this argument and supporting evidence would be relevant to a disability claim, it actually militates against the argument that Plaintiff had, under the guidance given in this circuit for the evaluation of Eighth Amendment claims, a present serious medical need that was not addressed. In further support of that conclusion is the fact that, in the damages portion of his complaint, Plaintiff does not aver any damages related to his knee or leg or to the delay in obtaining the hospital's diagnosis; rather, his alleged damages all relate to his wrists, arms, and elbows. (Compl. ¶ 9.)

Accordingly, I find that Plaintiff has not placed any medical evidence in the record to establish that the half-hour delay had any detrimental effect as required by *Napier, supra,* 238 F.3d at 742. I therefore suggest that Plaintiff has not shown that he "actually experienced the need for

10

medical treatment"of his knee or leg, let alone demonstrated that the "need was not addressed within a reasonable time frame." *Blackmore*, 390 F.3d at 900.

I further suggest that, under the standards set forth above, Plaintiff did not suffer from a serious medical condition that required immediate medical attention. *See Caldwell,* 968 F.2d 595 (finding no serious medical need where prisoner suffered from some pain after having been shot with a stun gun and was prescribed pain medication). Therefore, Plaintiff has failed to create an issue of fact as to the objective prong of an Eighth Amendment claim, and Defendant Krajnik is, I suggest, entitled to summary judgment. *See Wilson, supra; Caldwell, supra*.

### b. Excessive Force Claims Against the "John Doe" Defendants[4]

Plaintiff alleges that excessive force was applied while he was being taken to segregation and that the use of such force has detrimentally affected his wrists, fingers, arms, and elbows. (Compl. ¶¶ 7, 9.) Plaintiff has not supported this allegation with any medical evidence. On the contrary, the examining physician's report does not include any reference to Plaintiff complaining of wrist, finger, arm, or elbow pain, nor does the report evidence any injury to these body parts. (Dkt. 34, Ex. 2, attach. at 7.)

Although Plaintiff asserts that the actions of the officers were "malicious" and "sadistic," I suggest that even Plaintiff's own rendition of the facts does not support such a conclusion. After removing the bravado, I suggest that Plaintiff's complaint alleges that the officers applied the necessary force to accomplish their task of escorting him to segregation by utilizing some type of cart or wheelchair when it became clear that Plaintiff could not or would not walk there himself. (Compl. ¶ 6.) Therefore, I suggest Plaintiff has not come forward with evidence revealing the

---

[4]See, *infra*, note 1.

11

defendants acted with anything more than an "effort to maintain or restore discipline[.]" *Hudson v. McMillian*, 503 U.S. 1, 6, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).

Finally, to the extent that Plaintiff seeks damages for "emotional injuries" (Compl. at 5), I suggest that Plaintiff has failed to plead a claim that meets the Prison Litigation Reform Act's requirement that any action for emotional injury suffered while in custody is barred unless the prisoner can show physical injury. 42 U.S.C. § 1997(e). The physical injury need not be significant, but it must be more than *de minimus* for an Eighth Amendment claim to proceed. *Adams v. Rockafellow*, 66 Fed. Appx. 584, 586 (6th Cir. 2003), citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

### E.  Conclusion

For the reasons stated above, I suggest that Defendants are entitled to summary judgment because the evidence adduced by Plaintiff fails to present a sufficient disagreement to require submitting the Eighth Amendment claims to a jury. Here, where Plaintiff has failed to establish a genuine issue of material fact as to either the objective or subjective elements of his claims, the evidence is so one-sided that one party must prevail as a matter of law. *See Anderson*, 477 U.S. at 249-50.

### III.  REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.

2:05-cv-10254-DML-CEB Doc # 37 Filed 12/27/06 Pg 13 of 13 Pg ID 229

1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                              s/ *Charles E. Binder*
                              CHARLES E. BINDER
Dated: December 27, 2006        United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Kevin Thom, served on Jason Hood by first class mail, and served on District Judge Lawson in the traditional manner.

Date: December 27, 2006        By   s/Jean L. Broucek
                                                 Case Manager to Magistrate Judge Binder

13